***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Houser.
 *********** ISSUES TO BE DETERMINED
1. Whether Plaintiff is entitled to be paid by Defendants temporary total disability compensation for the period of April 7, 2008 to June 23, 2008, and if so, whether Defendants are entitled to a credit for the unemployment compensation paid to Plaintiff for that time period? *Page 2 
2. What work restrictions are appropriate for Plaintiff as the result of her October 30, 2007 injury by accident?
3. Whether Defendants are responsible for expenses associated with treatment Plaintiff received at Southeast Pain Care.
4. To what additional indemnity or medical compensation, if any, is Plaintiff entitled?
 *********** EVIDENTIARY MATTERS
1. At the hearing before the Deputy Commissioner, Plaintiff submitted the following:
 a. A packet of certificates from TJX, which was admitted into the record and marked as Plaintiff's Exhibit 1.
2. At the hearing before the Deputy Commissioner, Defendants submitted the following:
 a. A redacted surveillance report by Mr. Corey Barnett dated June 29, 2009, which was admitted into the record, and marked as Defendants' Exhibit 1;
 b. A redacted surveillance report by Mr. Corey Barnett dated July 28, 2009, which was admitted into the record, and marked as Defendants' Exhibit 2;
 c. A redacted surveillance report by Mr. Corey Barnett dated August 18, 2009, which was admitted into the record, and marked as Defendants' Exhibit 3;
 d. A redacted surveillance report by Mr. Joseph Talbot dated October 17, 2008, which was admitted into the record, and marked as Defendants' *Page 3 
Exhibit 4;
 e. A redacted surveillance report by Mr. Joseph Talbot dated December 2, 2008, which was admitted into the record and marked as Defendants' Exhibit 5;
 f. A complete surveillance DVD, which was admitted into the record over Plaintiff's objection and marked as Defendants' Exhibit 6 and;
 g. A shorter version of the surveillance DVD, which was admitted into the record over Plaintiff's objection and marked as Defendants' Exhibit 7.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit 1 as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter. The parties are subject to and bound by the North Carolina Workers' Compensation Act. At all times relevant to this claim, an employee-employer relationship existed between Plaintiff-employee and Defendant employer. There is no question as to misjoinder or nonjoinder of parties. Zurich American Insurance Company is the carrier on the risk.
2. Plaintiff sustained a compensable injury by accident to her right-arm on October 30, 2007. Defendants filed an Industrial Commission Form 61 denying the claim on November 20, 2007. Defendants subsequently admitted that Plaintiff sustained an accident pursuant to an Industrial Commission Form 60 filed on March 25, 2008. As of October 30, 2007, Plaintiff had *Page 4 
an average weekly wage of $413.94, yielding a compensation rate of $275.96.
3. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A packet of various Stipulated exhibits, which was admitted into the record and marked as Stipulated Exhibit 1, and which included the following:
 i. A Pre-Trial Agreement;
 ii. Industrial Commission Forms and Filings;
 iii. Medical and Rehabilitation Records;
 iv. Employment Records;
 v. A Payment History from the Employment Security Commission and;
 vi. Discovery Responses.
 b. A packet of additional medical records, which was admitted into the record and marked as Stipulated Exhibit 2.
4. Also made part of the record are the video depositions of Mr. Esteban Aguilera, Ms. Marleny Mejia, Ms. Yahaira Flatts, and Mr. Danny Pellarin, and the depositions of Dr. Steven B. Sanford, Dr. Joshua Miller, Dr. Glenn Gaston, and Mr. John McGregor, vocational expert.
 ***********
Based upon the foregoing Stipulations and evidence of record, the Full Commission makes the following: *Page 5 
 FINDINGS OF FACT
1. As of the hearing before the Deputy Commissioner, Plaintiff was 45 years of age with her date of birth being May 10, 1965.
2. Plaintiff testified that she has not attended school. Plaintiff is a native of El Salvador and has lived in the United States for 20 years. Plaintiff's primary language is Spanish, and Plaintiff testified through an interpreter as she had requested. Additionally, Plaintiff had requested and had been provided an interpreter for her medical appointments.
3. Plaintiff testified that although she speaks a small amount of English, she is unable to read any significant amount of English or Spanish.
4. During his video deposition, Mr. Esteban Aguilera, Plaintiff's husband, testified that although Plaintiff understands some English, he served as a translator when needed at medical appointments associated with this claim. Mr. Aguilera further testified that he completed Plaintiff's employment application with Defendant-Employer and that she reads no Spanish and only limited English.
5. Ms. Marleny Mejia, Plaintiff's daughter, also testified via video deposition, and stated that Plaintiff could speak English, but not very well. Ms. Mejia further testified that Plaintiff is able to read English and can write a limited amount of English.
6. On November 12, 2007, Plaintiff gave a recorded statement in English to Ms. Sabrina Martin, an employee of Defendant-Carrier. During the recorded statement, Plaintiff admitted that she understood what Ms. Martin asked her in English.
7. Mr. Toni Brown, an employee of Defendant-Employer, testified that she has had conversations with Plaintiff in English on numerous occasions. Mr. Danny Pellarin, Defendant-Employer's Human Resource Director, testified that he has had conversations with Plaintiff in *Page 6 
English, and that he was able to understand what Plaintiff said in English. Mr. Pellarin also testified that Plaintiff was a coach-trainer at Defendant-Employer's Distribution Center, and that she had to have some basic level of ability to read and understand English in order to serve in that capacity.
8. Plaintiff's employment history since moving to the United States includes working at a fast-food restaurant, for a cleaning service, and for a furniture manufacturer.
9. Plaintiff began her employment with Defendant-Employer in 1999 as a general warehouse associate. In that capacity, Plaintiff's duties included lifting and tagging boxes and totes (plastic baskets) of merchandise that were then distributed to Defendant-Employer's stores. Plaintiff was required to tag 1,370 items per shift, but testified that she could tag as many as 3,000 to 4,000 during a shift. The items Plaintiff tagged included clothing, shoes, and household goods.
10. During the period of her employment with Defendant-Employer, Plaintiff received performance awards and worked as a trainer for other employees.
11. Prior to the incident giving rise to this claim, Plaintiff sustained a workplace injury to her back, which she did not report immediately. For failing to do so, Plaintiff was disciplined by Defendant-Employer in written form. Other than the disciplinary report for that incident, there were no other disciplinary actions in Plaintiff's employment file.
12. On October 30, 2007, Plaintiff sustained an admittedly compensable injury by accident involving her right-elbow. Plaintiff testified that this injury occurred when a tote fell and hit her right-elbow. Plaintiff immediately reported her injury to her supervisor, Mr. Jeff Borowski, who completed an accident report.
13. According Mr. Borowski's written report, Plaintiff reported the injury having *Page 7 
occurred while she was pushing full totes and retrieving empty ones to replace the full ones. The report further reflects that Plaintiff reported that while performing these tasks, she began to experience pain in her right elbow.
14. On the date of her accident, Plaintiff completed her shift. On the following day, October 31, 2007, Plaintiff requested medical treatment and an additional accident report was completed.
15. Thereafter, Plaintiff informed Mr. Toni Brown that she had injured her right elbow while performing a pushing movement, and did not report anything falling onto her right arm. However, when Plaintiff began receiving medical treatment, she reported that a basket had fallen onto her right arm.
16. Plaintiff initially received medical treatment at Arrowood Medical Center from October 31, 2007, through November 9, 2007. Records from that facility reflect that Plaintiff, who is right-hand dominant, reported being injured when a basket weighing 15 pounds fell on her right-elbow causing her to experience pain in her elbow and numbness in her hand. Medical professionals at that facility assigned to Plaintiff a 10-pound lifting restriction.
17. Thereafter, Plaintiff was directed by Defendant-Employer's human resources director, Mr. Danny Pellarin, to see Dr. R. Glenn Gaston, a hand specialist at OrthoCarolina. Plaintiff was first examined by Dr. Gaston on December 18, 2007, at which time she was experiencing significant pain and occasional numbness in her right arm. Following an examination, Dr. Gaston diagnosed Plaintiff as having lateral epicondylitis (tennis elbow), which is tendonosis of the tendons from the lateral aspect of the elbow. Dr. Gaston testified that the most common cause of tendonosis is over use, although it can be caused by an injury in rare cases. Dr. Gaston recommended that Plaintiff undergo occupational hand therapy and assigned *Page 8 
five-pound restricted of lifting, pushing, or pulling. On January 29, 2008, Dr. Gaston provided Plaintiff with a wrist immobilizer, continued her therapy, and administered an injection.
18. On March 11, 2008, Plaintiff returned to Dr. Gaston who noted that following the injection in January 2008, Plaintiff's right-arm symptoms had returned. Prior to March 11, 2008, Plaintiff had been working for Defendant-Employer in a light-duty position labeling boxes. Dr. Gaston noted that Plaintiff's work was aggravating her symptoms and restricted her from any use of her right arm.
19. Thereafter, Plaintiff was out of work and paid total disability compensation by Defendants from March 11, 2008 through March 31, 2008. Additionally, Plaintiff was out of work from April 7, 2008 through June 23, 2008, during which time she received unemployment compensation. Plaintiff asserts that she is also entitled to total disability compensation for this period, subject to a credit for Defendants for the unemployment benefits.
20. On April 7, 2008, Plaintiff elected to take a voluntary layoff. Plaintiff was one of approximately 75 employees at Defendant-Employer's distribution center who did so. Plaintiff remained on voluntary layoff until June 23, 2008. During the majority of that period of time, Plaintiff received unemployment compensation at the rate of $210.00 per week. Prior to her October 30, 2007 injury, Plaintiff had also taken voluntary layoffs on occasion.
21. Based upon the credible evidence of record, the Full Commission finds that taking the voluntary layoff was Plaintiff's decision. The Full Commission further finds that had Plaintiff not taken the voluntary layoff, Defendant-Employer would have continued to have suitable employment available for her.
22. On May 1, 2008, Plaintiff again returned to Dr. Gaston and reported experiencing diffuse pain throughout her right-elbow. Following an MRI, Dr. Gaston had no explanation for *Page 9 
Plaintiff's reports of pain, but has testified that he did believe Plaintiff was using maximum effort and not faking during the examination. Dr. Gaston opined that surgery was not indicated for Plaintiff's right-arm condition, and that he had no further treatment to offer her. Additionally, Dr. Gaston assigned Plaintiff a permanent five-pound lifting restriction and a three percent permanent partial disability rating to the right arm. Dr. Gaston testified that Plaintiff could technically do more with her left hand.
23. Plaintiff continued to experience right-arm symptoms and sought treatment on her own from Dr. Stephen Shaffer, an orthopedic surgeon. Plaintiff was initially examined by Dr. Shaffer on June 27, 2008, at which time he noted Plaintiff had lost five to 10 degrees of full-elbow extension and decreased right-hand grip strength. Additionally, Dr. Shaffer assigned Plaintiff a five percent permanent partial disability rating to the right arm.
24. On July 3, 2008, Plaintiff was terminated because Defendant-Employer was unable to accommodate her permanent work restrictions. Following her termination, Plaintiff filed a union grievance alleging that she had been terminated unjustly. Thereafter, Plaintiff's union and Mr. Pellarin entered into an agreement that Plaintiff would be reinstated to Defendant-Employer's payroll in an inactive status for a period of one year from the date she last worked.
25. In December 2008, Plaintiff requested approval to return to Dr. Gaston. However, at that time, Dr. Gaston was not willing to re-examine her. Accordingly, Plaintiff was referred to Dr. Steven B. Sanford, whose practice is devoted to the treatment of the hand and forearm, including the elbow.
26. Plaintiff was first examined by Dr. Sanford on January 6, 2009, at which time she reported experiencing excruciating pain. Dr. Sanford noted that Plaintiff had some tenderness and that her right hand was slightly cooler than her left. However, Dr. Sanford did not find *Page 10 
objective evidence of a source for that type of pain and opined that Plaintiff did not give her maximum effort during grip strength testing.
27. Dr. Sanford concurred with Dr. Gaston's diagnosis that Plaintiff had lateral epicondylitis, and that she was not a surgical candidate. Dr. Sanford opined that Plaintiff had reached maximum medical improvement, and that a five-pound lifting restriction for the right arm was appropriate. Dr. Sanford also assigned Plaintiff a five percent permanent partial disability rating to the right arm. Additionally, Dr. Sanford testified that Dr. Gaston was in the best position to evaluate Plaintiff's condition.
28. On April 27, 2009, Plaintiff underwent a functional capacity evaluation (FCE). The FCE results indicated that Plaintiff could perform a medium physical level type work and had the ability to occasionally lift as much as 30 pounds floor to waist, 25 pounds waist to shoulder, 20 pounds shoulder to overhead and occasionally as much as 30 pounds, and to push or pull 38 pounds. The FCE report also reflected that Plaintiff had notable physical deficits with her right arm and that she experienced significant pain while performing the lifting, carrying, manipulation, and gripping tasks.
29. Based upon the results of the FCE, Dr. Sanford opined that Plaintiff's lifting ability is average or a little above average for women of her age. Dr. Sanford further opined that based upon the FCE results, Plaintiff was able to perform a job that does not require lifting more than 20 pounds with both arms. Dr. Sanford testified that he would expect Plaintiff to be able perform in the medium category and that based upon the FCE, Plaintiff should be able to perform a job that did not require lifting more than 20 pounds. However, Dr. Sanford agreed that Plaintiff's ability to perform work is not the same as Plaintiff's ability to tolerate work due to pain. *Page 11 
30. On May 15, 2009, Plaintiff returned to Dr. Gaston who has stated that despite the FCE results, he continued to believe that a five-pound lifting restriction with the right hand is what Plaintiff could tolerate. Additionally, Dr. Gaston explained that despite the FCE results, he concluded that Plaintiff would not be able to perform work which involved lifting more than 20 pounds consistently because of her pain.
31. On her own, Plaintiff sought additional medical treatment from Dr. Anthony DeFranzo, a professor in the Department of Plastic and Reconstructive Surgery at Wake Forest University Baptist Medical Center. Dr. DeFranzo first examined Plaintiff on May 28, 2009, and noted that she had lost approximately 50% of the strength in her right hand. Dr. DeFranzo opined that Plaintiff may benefit from pain management and assigned a 20% permanent partial disability rating to her right upper extremity.
32. On July 22, 2009, Plaintiff was again terminated following the expiration of one year since she last actually performed work for Defendant-Employer.
33. On September 24, 2009, Plaintiff sought additional treatment on her own from Dr. Joshua Miller at Southeast Pain Care. Dr. Miller noted that Plaintiff had swelling in her right elbow and was assessed with right-elbow pain and weakness after a crushing injury, right upper extremity myofascial pain, and a possible right upper extremity neuropathy. As treatment, Dr. Miller ordered diagnostic studies, and recommended that Plaintiff take prescription pain medication and a nerve block. Dr. Miller's treatment recommendations were not authorized by Defendants.
34. Regarding ongoing medical treatment for Plaintiff's pain, Dr. Gaston has indicated that he would defer to a pain management specialist regarding Plaintiff's treatment.
35. Regarding her ongoing symptoms, Plaintiff continues to experience difficulty *Page 12 
performing household tasks, such as cooking, cleaning, and yard work, with her right arm. Plaintiff's testimony about her symptoms and limitations was corroborated by the testimony of Mr. Esteban Aguilera, Ms. Marleny Mejia, and Ms. Yahaira Flatts, a family friend.
36. Defendants conducted surveillance of Plaintiff in the fall of 2008 and summer of 2009. The private investigators testified that they observed Plaintiff opening doors, leaning, driving, or talking on a cell phone with her right hand. In addition, she was observed carrying two bottles of water and plastic grocery bags. She also carried a purse. There is no credible evidence of record upon which to find that Plaintiff was observed lifting any item weighing more than five pounds with her right hand during the period of Defendants' surveillance.
37. On May 4, 2010, Plaintiff underwent a vocational assessment by Mr. John McGregor, MS, CDMS, CDE. Mr. McGregor noted that Plaintiff had several current barriers to employment, including her five-pound right arm lifting restriction, limited literacy in English or Spanish, her inability to complete a job application without assistance, and limited vocational skills. Mr. McGregor's report indicates that Plaintiff should take English as a second language classes and vocational counseling to identify a suitable vocational goal. Mr. McGregor was unable to identify a specific job that Plaintiff could attain.
38. Although Plaintiff has looked for work on her own at multiple establishments, she has not been successful in securing employment. Based upon the credible evidence of record, the Full Commission finds that Plaintiff has conducted a reasonable job search since the time of her final termination by Defendant-Employer.
39. Based upon the credible evidence of record, the Full Commission finds that Plaintiff would benefit from further vocational rehabilitation services to be provided by Mr. John McGregor, or a mutually agreed upon vocational expert. *Page 13 
40. Based upon the totality of the evidence of record, the Full Commission finds that Plaintiff has a five-pound lifting restriction with her right arm and that Plaintiff may lift up to 20 pounds occasionally with both hands, using her right hand more for guidance.
41. Based upon the totality of the credible evidence of record, the Full Commission finds that Plaintiff was not disabled and had the capacity to earn her normal wages during the period of April 7, 2008 through June 23, 2008, the period during which she took a voluntary layoff.
42. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her October 30, 2007 injury by accident involving her right elbow, Plaintiff has been unable to earn any wages in her former position with Defendant-Employer or in any other employment for the period of June 24, 2008, through the present and continuing until such time as she returns to work or further Order of the Commission.
43. Further treatment for Plaintiff's pain at Southeast Pain Center is reasonably medically necessary.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On October 30, 2007, Plaintiff sustained an admittedly compensable injury by accident involving her right-elbow. N.C. Gen. Stat. § 97-2(6).
2. A claimant can prove their disability in one of four ways by production of: (1) medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work or any employment; (2) evidence that he is capable of some work, but has *Page 14 
after reasonable effort has been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employments; or (4) evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. Based upon the totality of the credible vocational and medical evidence of record, the undersigned finds that Plaintiff was not disabled and had the capacity to earn her normal wage level during the period of April 7, 2008 through June 23, 2008, the period during which she took a voluntary layoff. N.C. Gen. Stat. § 97-29;Russell v. Lowe's Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her October 30, 2007 injury by accident involving her right-elbow, Plaintiff is entitled to be paid by Defendants ongoing total disability compensation at the rate of $275.96. per week for the period of June 24, 2008 through the present and continuing until such time as she returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowe's Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Based upon the credible evidence of record, the undersigned finds that Plaintiff would benefit from further vocational rehabilitation services to be provided by Mr. John McGregor, or a mutually agreed upon vocational expert. N.C. Gen. Stat. § 97-25.
6. As the result of her October 30, 2007 injury by accident, Plaintiff is entitled to have Defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with Plaintiff's treatment at the at Southeast Pain Center, when the medical bills have been approved according to *Page 15 
established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff ongoing temporary total disability compensation at the rate of $275.96 per week for the period of June 24, 2008 through the present and continuing until such time as she returns to work or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to Plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by Plaintiff as the result of her October 30, 2007 injury by accident, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with Plaintiff's treatment at the at Southeast Pain Center, when the medical bills have been approved according to established Industrial Commission procedures.
3. Defendants shall pay past and future expenses for Plaintiff's vocational rehabilitation as directed by John McGregor and for further vocational rehabilitation services to be provided by Mr. John McGregor, or a mutually agreed upon vocational expert.
4. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for Plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due Plaintiff and paid directly to counsel for Plaintiff, with counsel for Plaintiff receiving every fourth check thereafter.
5. Defendants shall bear the costs. *Page 16 
This the 25th day of July, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1